UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| STUART E. STEINBERG, Individually and as Special Administrator of the ESTATE OF MAX D. STEINBERG, EVIE R. STEINBERG, PAIGE P. TEREN and JAKE R. STEINBERG, | Case No. 24-cv-4999-ENV-SJB |
| Plaintiffs, | **SERVED: October 30, 2024** |
| - against - | |
| QATAR CHARITY, QATAR NATIONAL BANK and MASRAF AL RAYAN, | |
| Defendants. | |

## DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR ORDER AUTHORIZING SERVICE OF PROCESS PURSUANT TO RULE 4(f)(3) OR, ALTERNATIVELY, FOR ISSUANCE OF LETTERS ROGATORY

LIMITED APPEARANCES WITHOUT WAIVER OF RIGHTS[1]:

**ROPES & GRAY LLP**
Michael G. McGovern
1211 Avenue of the Americas
New York, NY 10036-8704
Tel.: 212.596.9000
Michael.McGovern@ropesgray.com

Douglas Hallward-Driemeier
2099 Pennsylvania Avenue, NW
Washington, DC 20006-6807
Tel. 202.508.4600
Douglas.Hallward-Driemeier@ropesgray.com
*Counsel for Qatar National Bank Q.P.S.C.*

**PILLSBURY WINTHROP SHAW PITTMAN LLP**
Carolina A. Fornos
Christopher C. Caffarone
31 West 52nd Street
New York, NY 10019-6131
Tel.: 212.858.1000
Carolina.Fornos@pillsburylaw.com
Christopher.Caffarone@pillsburylaw.com
*Counsel for Masraf al Rayan*

**DLA PIPER**
Kevin Walsh
John M. Hillebrecht
1251 Avenue of the Americas
New York, NY 10020-1104
Tel: 212.335.4500
Kevin.Walsh@us.dlapiper.com
John.Hillebrecht@us.dlapiper.com
*Counsel for Qatar Charity*

---

[1] Defendants Qatar Charity ("QC"), Qatar National Bank, Q.P.S.C. ("QNB"), and Masraf Al Rayan ("MAR") (collectively, "Defendants") make a limited appearance without consenting to service of process or personal jurisdiction. Defendants file this brief for the sole purpose of responding to Plaintiffs' motion for alternative service ("Motion" or "Mot.") as per the Court's order dated October 11, 2024, and expressly reserve all rights and all available defenses, including lack of subject matter jurisdiction, lack of personal jurisdiction, improper venue, insufficient process, insufficient service of process, lack of standing, failure to state a claim upon which relief can be granted, and any other defenses to the claims alleged in the Complaint. Defendants request that the Court deny Plaintiffs' Motion.

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................ 1

RELEVANT FACTS .............................................................................. 1

    A.    Plaintiffs Know that Foreign Defendants Must Be Served Via Letters Rogatory.............................................................................................. 1

    B.    Plaintiffs Know That the Court Lacks Personal Jurisdiction and That These Cases Are Legally Deficient .............................................................. 2

    C.    Plaintiffs Have Made No Attempt at Service Since Filing this Action ................. 3

    D.    Plaintiffs' Failure to Timely Serve Mandates Dismissal of the Action ................. 4

    E.    Plaintiffs' Emails to Defense Counsel Regarding Intervention in *Force* Are Not Relevant to Service in this Action ................................................. 4

ARGUMENT ........................................................................................ 5

    I.    Proper Service of Foreign Defendants in Qatar Requires Letters Rogatory........... 5

    II.    Alternative Service Under Rule 4(f)(3) Is Not Proper............................................ 8

    III.    Alternative Service Is Improper Where Plaintiffs Have Failed to Attempt Any Service........................................................................................ 11

    IV.    Plaintiffs' Motion Is Moot Because Dismissal Is Required................................. 13

CONCLUSION ..................................................................................... 16

# TABLE OF AUTHORITIES

Page(s)

<u>Cases</u>

*Baliga on Behalf of Link Motion Inc. v. Link Motion Inc.*,
    385 F. Supp. 3d 212 (S.D.N.Y. 2019) ................................................................. 12

*Bank of Cape Verde v. Bronson*,
    167 F.R.D. 370 (1996) ......................................................................................... 14

*Codigo Music, LLC v. Televisa S.A. de C.V.*,
    No. 15-CIV-21737, 2017 WL 4346968 (S.D. Fla. Sept. 29, 2017) ....................... 9

*Convergen Energy LLC v. Brooks*,
    No. 20-cv-3746 (LJL), 2020 WL 4038353 (S.D.N.Y. July 17, 2020) ............ 8, 9, 10

*Counter Terrorist Grp. U.S. v. N.Y. Mag.*,
    374 F. App'x 233 (2d Cir. 2010) ......................................................................... 14

*DEF v. ABC*,
    366 F. App'x 250 (2d Cir. 2010) ......................................................................... 13

*Dorchester Fin. Sec., Inc. v. Banco BJR, S.A.*,
    No. 11 Civ. 1529(KMW), 2014 WL 684831 (S.D.N.Y. Feb. 21, 2014) ................. 6

*Ehrenfeld v. Salim a bin Mahfouz*, No. 04 Civ. 9641(RCC), 2005 WL 696769 (S.D.N.Y.
    Mar. 23, 2005) ..................................................................................................... 10

*Fabbro v. Balke*,
    No. 19-CV-5764-ENV-SJB, 2020 WL 3525692 (E.D.N.Y. June 29, 2020) ......... 11

*Falvey Cargo Underwriting Ltd. v. Zim Integrated Shipping Servs. Ltd.*,
    No. 1:19-cv-11495 (LTS) (SDA), 2023 WL 8716888 (S.D.N.Y. Nov. 30, 2023),
    *report and recommendation adopted*, 2024 WL 3373368 (S.D.N.Y. July 11, 2024)
    ................................................................................................... 13, 14, 15, 16

*FingerMotion, Inc. v. Capybara Rsch.*,
    No. 23-CV-9212 (JPC) (KHP), 2024 WL 81818 (S.D.N.Y. Jan. 8, 2024) ............ 12

*Force v. Qatar Charity*,
    Civ. A. No. 20-cv-02578-BMC, DE 1 (E.D.N.Y. June 10, 2020) ............ 1, 2, 3, 4, 14

*Freedom Watch, Inc. v. Org. of Petrol. Exporting Countries (OPEC)*,
    107 F. Supp. 3d 134 (D.D.C. 2015) ....................................................................... 9

*Halvorssen v. Simpson*,
    328 F.R.D. 30 (E.D.N.Y. 2018) ..................................................................................9, 12

*Henkin v. Qatar Charity*,
    Civ. A. No. 21-cv-05716-RER-VMS, ECF No. 1 E.D.N.Y. Oct. 13, 2021) .....................1, 2, 3

*In re Auto. Parts Antitrust Litig.*,
    No. 16-cv-04003, 2017 WL 10808851 (E.D. Mich. Nov. 2, 2017)..........................................9

*In re GLG Life Tech Corp. Sec. Litig.*,
    287 F.R.D. 262 (S.D.N.Y. 2012) (Mot. ) ...............................................................................10

*In re Graña y Montero S.A.A. Sec. Litig.*,
    CV 17-1105 (JMA) (ARL), 2019 WL 259778 (E.D.N.Y Jan. 9, 2019), *report and
    recommendation adopted*, 2019 WL 1046627 (E.D.N.Y. Mar. 5, 2019) .........................10, 12

*In re The Richmond Grp., Inc.*,
    No. 2–16–20258–PRW, 2017 WL 4221099 (Bankr. W.D.N.Y. Sept. 21, 2017)....................6

*In re TFT-LCD Antitrust Litig.*,
    Nos. M 07–1827 SI, C 10–4945 SI, 2011 WL 845882 (N.D. Cal. Mar. 8, 2011)..................11

*Leger v. Kalitta*,
    No. 16-CV-6545 (PKC)(PK), 2018 WL 2057142 (E.D.N.Y. Jan. 26, 2018)...........................7

*Madu, Edozie & Madu, P.C. v. SocketWorks Ltd. Nigeria*,
    265 F.R.D. 106 (S.D.N.Y. 2010) ...........................................................................................11

*Meyer v. Seidel*,
    89 F.4th 117 (2d Cir. 2023) ....................................................................................................14

*Noble Sec., Inc. v. Ingamar Co.*,
    No. 21-CV-1372 (MKB), 2021 WL 2012508 (E.D.N.Y. May 20, 2021) ...............................11

*Ping Chen ex rel. U.S. v. EMSL Analytical, Inc.*,
    966 F. Supp. 2d 282 (S.D.N.Y. 2013)....................................................................................14

*Prediction Co. v. Rajgarhia*,
    No. 09 Civ. 7459(SAS), 2010 WL 1050307 (S.D.N.Y. Mar. 22, 2010) ................................11

*Przewozman v. Qatar Charity*,
    Civ. A. No. 20-cv-06088-NGG-TAM, DE 1 (E.D.N.Y. December 15, 2020).................1, 2, 3

*Sotloff v. Qatar Charity*,
    No. 22-cv-80726-DMM (S.D. Fla.) (*see* Rocco Decl. ) ...........................................................3

*Spin Master, Ltd. v. Aomore-US*,
    No. 23-Civ. 7099, 2024 WL 3030405 (S.D.N.Y. June 17, 2024) ......................................9, 15

*USHA (India), Ltd. v. Honeywell Int'l, Inc.*,
    421 F.3d 129 (2d Cir. 2005)......................................................................13

*Wash. State Inv. Bd. v. Odebrecht S.A.*,
    No. 17 Civ. 8118 (PGG), 2018 WL 6253877 (S.D.N.Y. Sept. 21, 2018) .............10

*Wei Su. v. Sotheby's, Inc.*,
    No. 17-CV-4577 (VEC), 2018 WL 4804675 (S.D.N.Y. Oct. 3, 2018) .................11

*Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*,
    127 F. Supp. 3d 156 (S.D.N.Y. 2015).........................................................7

*Wrinkled Surface Enters. LLC v. Gurianov*,
    No. 19-CV-8882 (JPO), 2021 WL 142280 (S.D.N.Y. Jan. 15, 2021)...................12

*Zapata v. City of New York*,
    502 F.3d 192 (2d Cir. 2007)......................................................................16

*Zhang v. Baidu.com Inc.*,
    293 F.R.D. 508 (S.D.N.Y 2013) ...............................................................10

*Zhang v. Baidu.com Inc.*,
    932 F. Supp. 2d 561 (S.D.N.Y 2013).........................................................15

<u>Rules and Regulations</u>

Federal Rules of Civil Procedure
    Rule 4 ................................................................................... *passim*

    Rule 24(b)(1).........................................................................................5

<u>Other Authorities</u>

C. Todd Lopez, '*Major Non-NATO Ally' Designation Will Enhance U.S., Qatar
    Relationship*, U.S. Dep't of Defense (Jan. 31, 2022),
    https://www.defense.gov/News/News-Stories/Article/Article/2917336/major-non-
    nato-ally-designation-will-enhance-us-qatar-relationship/ .......................................7

Joseph Clark, '*Austin Lauds Key Partnership in Middle East'*, U.S. Dep't of Defense
    (Dec. 19, 2023) https://www.defense.gov/News/News-
    Stories/Article/Article/3622360/austin-lauds-key-partnerships-in-middle-east/ ...............7

Qatari Civil & Commercial Procedures Law, Article 10 (Law No. 13 of 1990).........................5, 6

## PRELIMINARY STATEMENT

In a fourth attempt to relitigate the same allegations against three Qatari foreign defendants with no presence in the United States and over whom the Court lacks personal jurisdiction, Plaintiffs ask this Court to excuse them from effecting proper service *without even attempting* to effect such service. Plaintiffs have served Defendants via Letters Rogatory *three* times in three prior actions and now, with no good cause, ask this Court to exempt them from this fundamental legal requirement. As explained below, Plaintiffs' motion should be denied because (1) service via Letters Rogatory is proper to comply with due process; (2) service pursuant to Rule 4(f)(3) of the Federal Rules of Civil Procedure is not appropriate in this case and would offend foreign law; (3) Plaintiffs cannot properly avail themselves of alternative means of service without first attempting any service; and (4) Rule 4 mandates dismissal of the action for Plaintiffs' failure to attempt any service within 90 days.

## RELEVANT FACTS

### A. Plaintiffs Know that Foreign Defendants Must Be Served Via Letters Rogatory

On July 18, 2024, Plaintiffs filed this fourth iteration in a series of lawsuits brought by the same counsel against Defendants Qatar Charity ("QC"), Qatar National Bank, Q.P.S.C. ("QNB"), and Masraf Al Rayan ("MAR") (collectively, "Defendants") in the Eastern District of New York asserting the same claims under the Anti-Terrorism Act ("ATA"). *See* Declaration of Patrick L. Rocco ("Rocco Decl."), dated October 16, 2024, ¶¶ 3-7, Exs. 1, 2.[2] As Plaintiffs acknowledge, all three defendants are Qatari – *i.e.*, foreign defendants. Rocco Decl. ¶ 1.

---

[2] *See also Force v. Qatar Charity*, Civ. A. No. 20-cv-02578-BMC, Docket Entry ("DE") 1 (E.D.N.Y. June 10, 2020) (Judge Cogan) ("*Force*"); *Henkin v. Qatar Charity*, Civ. A. No. 21-cv-05716-RER-VMS, DE 1 E.D.N.Y. Oct. 13, 2021) (Judge Reyes) ("*Henkin*"); *Przewozman v. Qatar Charity*, Civ. A. No. 20-cv-06088-NGG-TAM, DE 1 (E.D.N.Y. December 15, 2020) (Judge Garaufis) ("*Przewozman*").

Understanding their legal obligations, Plaintiffs served the Defendants via Letters Rogatory in three prior cases in this District – *Force, Henkin,* and *Przewozman*.  Rocco Decl. ¶ 22 ("The plaintiffs in the Force, Henkin, and Przewozman Actions effected service on Qatar Charity, Qatar National Bank, and Masraf Al Rayan via letters rogatory.").  While it is generally advised by the U.S. Department of State that the process may take a year or more (*see id.* ¶ 25), Plaintiffs admit that it may take less than ten months, as it did in *Henkin* (*id.* ¶ 23) – even with delays caused at that time by the COVID-19 pandemic.  Mot. at 5.[3]  In other words, had Plaintiffs actually sought Letters Rogatory promptly upon filing the instant complaint in July 2024, service could well have been completed already, and in any event by no later than April 2025.  Any suggestion that complying with these legal requirements is too great a delay is inconsistent with Plaintiffs' own delay in waiting over *ten years* to bring this action allegedly premised on a terrorist attack that occurred on July 20, 2014.  Rocco Decl. ¶ 2.

**B.  Plaintiffs Know That the Court Lacks Personal Jurisdiction and That These Cases Are Legally Deficient**

In all three of the prior cases, Defendants filed motions to dismiss for lack of personal jurisdiction and failure to state a claim.  *Id.* ¶¶ 4-6.  Last year, Judge Garaufis dismissed *Przewozman with prejudice* for lack of personal jurisdiction as to all Defendants.  *Id.* ¶ 6; *Prezwozman*, 2023 WL 2562537 (E.D.N.Y. Mar. 17, 2023).  Plaintiffs in *Przewozman* did not even bother to appeal that dismissal.  In *Henkin*, the court held that "plaintiffs' generalized allegations are insufficient" to confer jurisdiction over Defendants, dismissing the complaint as to QNB and ordering limited jurisdictional discovery as to MAR and QC.  Rocco Decl. ¶ 5; *see also*

---

[3] Plaintiffs acknowledge that "the delay in those cases may have been exacerbated by the COVID pandemic."  Mot. at 5.  In *Force*, Plaintiffs noted that "as a result of the COVID-19 pandemic, the U.S. Department of State[]…ceased transmitting letters rogatory…for more than a year during the 2020-2021 period."  *See Force*, DE 54 at 4.  These circumstances no longer exist.

*Henkin*, 2023 WL 2734788, at *10-13 (E.D.N.Y. Mar. 31, 2023).[4]  Defendants' motions to dismiss in *Force* remain pending.  Rocco Decl. ¶ 4.

Another similar action, *Sotloff v. Qatar Charity*, No. 22-cv-80726-DMM (S.D. Fla.) ("*Sotloff*") (*see* Rocco Decl. ¶ 21), also ended in dismissal *with prejudice* as to all Defendants.  The same plaintiffs' counsel that co-authored the complaints in *Force, Henkin,* and *Przewozman* (and this case)—Perles Law Firm PC ("Perles")— filed the *Sotloff* case against QC and QNB in the U.S. District Court for the Southern District of Florida.  *See Sotloff*, Docket Entry ("DE") 1.  The *Sotloff* complaint relied primarily on a purported bank record that supposedly linked QC and QNB to an $800,000 wire transfer allegedly facilitating the murder of an American journalist by the terrorist group ISIS.  *See id*.  However, when Perles finally produced that purported bank record after being ordered to do so by the court, QC and QNB quickly identified numerous indicia of forgery on the very face of the document, including numerous misspellings in Turkish of key banking terms and a reference to a SWIFT code for QNB that *did not even exist* at the time of the alleged transfer.  *See id.*, DE 97 at 2.  Faced with these glaring indicia of forgery, Perles agreed to move to vacate the court's earlier order denying a motion to dismiss and to dismiss the action *with prejudice*, *see id.* at 1, 14, which the court subsequently granted, *see id.*, DE 98.  The allegations in these cases have caused reputational damage to QC, QNB, and MAR, with subsequent coverage of the dismissals by the same news outlets that had publicized the plaintiffs' allegations being few to none.

### C.  Plaintiffs Have Made No Attempt at Service Since Filing this Action

In their Motion, Plaintiffs jump straight to alternative service with no good cause and having made no effort to serve Defendants properly by any means.  Plaintiffs' counsel's

---

[4] Jurisdictional discovery remains ongoing.  *See Henkin*, DE 116 (E.D.N.Y. Oct. 1, 2024).

declaration in support of the Motion fails to identify any attempt at service.  *See generally* Rocco Decl.  Nor do Plaintiffs assert that they served a waiver of service pursuant to Rule 4(d)(1) of the Federal Rules of Civil Procedure.  *Id.*  Indeed, Plaintiffs have done *nothing* to comply with the Rules and the law, except to file this Motion seeking the Court's intervention and burdening the Court without first attempting to follow the Rules.

### D.  Plaintiffs' Failure to Timely Serve Mandates Dismissal of the Action

This action was filed on July 18, 2024, seeking damages for injuries that allegedly occurred on July 20, 2014 – *i.e.*, two days prior to the expiration of the 10-year statute of limitations under the ATA.  *See* DE 1; Rocco Decl. ¶ 2.  Pursuant to Rule 4(m) of the Federal Rules of Civil Procedure, service must be effected within 90 days of filing, which expired October 16, 2024.  Fed. R. Civ. P. 4(m).  On September 30, 2024 – within the 90-day deadline – defense counsel informed Plaintiffs that Defendants would not agree to email service and would insist on "proper service consistent with the Federal Rules of Civil Procedure, Letters Rogatory, and Qatari law."  Rocco Decl. Ex. 4 at 1.  Defense counsel went a step further and pointed out that Plaintiffs had not even attempted service.  *Id.*  Despite that warning, Plaintiffs never served or even attempted to serve Defendants prior to the October 16 deadline, which now requires that this action be dismissed, mooting the issue of service of this action.

### E.  Plaintiffs' Emails to Defense Counsel Regarding Intervention in *Force* Are Not Relevant to Service in this Action

Plaintiffs first contacted Defendants in early July 2024 seeking consent to intervene in the *Force* action to add new plaintiffs.  Rocco Decl. ¶ 14.  At the time of this request, Plaintiffs had served Defendants via Letters Rogatory years before in the *Force* action, and all counsel had already entered appearances as counsel of record in that matter.  *Id.* ¶¶ 8-13.  Defendants, having already appeared through counsel in a pending case, thus consented to intervention to add

additional plaintiffs in that litigation as a means of conserving judicial resources pursuant to Federal Rules of Civil Procedure 24(b)(1) and obviating the need for a separate new action. *Id.*

Plaintiffs have sought to turn this procedural history on its head. Contrary to their present claims, it is Plaintiffs who first sought to engage Defendants under the framework of intervening in an existing case. They obtained this consent, but then decided to reject Defendants' accommodation and instead filed this new action, which adds yet another baseless case to the federal docket. Plaintiffs' claim that they were "unwilling to delay effectuating service" is simply false. Rocco Decl. ¶ 14, Ex. 4. In fact, Plaintiffs did just that – they inexplicably delayed effectuating service and now, to cure their oversight, ask this Court for dispensation from fundamental service rules. Plaintiffs never even attempted service within the requisite 90 days, nor do they otherwise request an extension of time of the 90 days. Their motion should be denied.

## ARGUMENT

### I. Proper Service of Foreign Defendants in Qatar Requires Letters Rogatory

Service of Defendants, three foreign corporations, is permitted "in any manner prescribed by Rule 4(f) for serving an individual, except personal delivery under (f)(2)(C)(i)." Fed. R Civ. P. 4(h)(2). Plaintiffs acknowledge that "Rule 4(f)(1) is not available because Qatar is not party to any international service agreement such as the Hague Convention." Mot. at 9. Plaintiffs also acknowledge that they cannot serve Defendants by mail under Rule 4(f)(2)(C)(ii). *Id.* at 10. Article 10 of the Qatari Civil & Commercial Procedures Law (Law No. 13 of 1990) governs service upon a corporation and permits personal service in Qatar only upon "the chairperson or manager or one of the joint partners or their legal representatives or whoever acts on their behalf." *See* Qatari Civil & Commercial Procedures Law (Law No. 13 of 1990, as amended by Law No. 7 of 1995), Article 10. Moreover, Article 2 of the same law expressly provides, "*Every* summons

or execution *shall* be served through the *police or any other authority appointed by the President of the Supreme Judicial Council* at the request of the other party to the Registry of the court or by a court order." *See id.*, Article 2 (emphases added). But Plaintiffs have made clear that they will not serve Defendants through this process. *See* Mot. at 9-10. Thus, service by Letters Rogatory is Plaintiffs' only option under Rule 4(f)(2).

Plaintiffs' proposed method of alternative service – service on U.S. Counsel under Rule 4(f)(3) – is contrary to due process, public policy, and simply inappropriate where Plaintiffs have done *nothing* to attempt service. *See infra* Parts II, III. Separate from legal impediments to Plaintiffs' request, practically speaking, such service would, at most, also potentially result in a judgment that would be ultimately unenforceable in Qatar. "If a United States judgment requires enforcement in a foreign country, the service of process on which the judgment is based must have complied with the internal laws of the enforcing country." *In re The Richmond Grp., Inc.*, No. 2–16–20258–PRW, 2017 WL 4221099, at \*5 (Bankr. W.D.N.Y. Sept. 21, 2017) (citation omitted) (denying Rule 4(f)(3) motion and noting that "it does the Estate no good if the resulting federal court judgment is unenforceable in New Zealand"); *see also Dorchester Fin. Sec., Inc. v. Banco BJR, S.A.*, No. 11 Civ. 1529(KMW), 2014 WL 684831, at \*2 (S.D.N.Y. Feb. 21, 2014) ("Plaintiff had found that the judgment was unenforceable against Defendant in Brazil because Plaintiff had not served process by letters rogatory, as required by Brazilian law," so Plaintiff "needed to serve Defendant by letters rogatory in a new action.").

Notably, Plaintiffs' counsel has served these same three Qatari Defendants via Letters Rogatory in prior actions. Rocco Decl. ¶ 22. In each case, the court issued Letters Rogatory for service of process on Defendants in Qatar, and the Qatari authorities returned the executed Letters Rogatory to the U.S. Department of State. *Id.* ¶¶ 22-24. Plaintiffs are required to complete the

same process here.  To authorize Plaintiffs to skip these legal requirements simply for convenience and because the foreign defendants have retained U.S. counsel in other actions would only deter foreign defendants from consulting with U.S. counsel.  In this particular case, such an exemption from the rules of service would be detrimental to public policy encouraging engaging counsel for legal matters.

To permit alternative service on U.S. counsel would also offend Qatari law and Qatar, a foreign sovereign whom the United States government has designated a "major Non-NATO ally" and critical partner in regional de-escalation.[5]  Particularly in these unsettling times, international comity with such an important ally is paramount.  This is especially so where, as here, the Complaint makes highly charged accusations of misconduct by the government of Qatar. Accordingly, the Court should not permit alternative service on U.S. counsel.

---

[5] C. Todd Lopez, '*Major Non-NATO Ally' Designation Will Enhance U.S., Qatar Relationship*, U.S. Dep't of Defense (Jan. 31, 2022), https://www.defense.gov/News/News-Stories/Article/Article/2917336/major-non-nato-ally-designation-will-enhance-us-qatar-relationship/ ("According to the U.S. State Department, a designation as major non-NATO ally, or MNNA, serves as 'a powerful symbol of the close relationship the United States shares with those countries and demonstrates our deep respect for the friendship for the countries to which it is extended.'"); *see also* Joseph Clark, '*Austin Lauds Key Partnership in Middle East'*, U.S. Dep't of Defense (Dec. 19, 2023) https://www.defense.gov/News/News-Stories/Article/Article/3622360/austin-lauds-key-partnerships-in-middle-east/ ("Secretary of Defense Lloyd J. Austin III today praised the strong defense ties between the U.S. and Qatar . . . Austin underscored the United States' commitment to the strategic defense relationship. . . . [T]he secretary thanked both [Qatari] leaders for 'Qatar's critical efforts to secure the release of 110 hostages held by Hamas and expressed hope that Hamas will release the remaining hostages.' . . . In remarks ahead of his meeting with the Qatari defense minister, Austin expressed gratitude for [Qatar]'s 'tireless coordination' and continued support for strengthening the defense relationship as he welcomed new investments by Qatar at Al Udeid Air Base— a critical, regional node for U.S. troops operating in the Middle East.  . . .  He said the presence of U.S. troops at the base 'allows the United States to support a range of critical missions in the region and respond to challenges to our shared security.'").  "[T]he Court may take judicial notice of 'documents retrieved from official government websites' or other government records from such websites." *Leger v. Kalitta*, No. 16-CV-6545 (PKC)(PK), 2018 WL 2057142, at *3 (E.D.N.Y. Jan. 26, 2018) (quoting *Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*, 127 F. Supp. 3d 156, 166 (S.D.N.Y. 2015)) (collecting cases).

## II.     Alternative Service Under Rule 4(f)(3) Is Not Proper

Without any attempt at service, and despite serving via Letters Rogatory three times in the past, Plaintiffs have burdened the Court with a motion for alternative service pursuant to Rule 4(f)(3) in a manner that is contrary to what Rule 4(f)(3) was intended to allow.  Specifically, Plaintiffs seek to serve three foreign entities located at a place *outside* of the United States through other individuals *within* the United States.  The plain meaning of the rule and Advisory Committee Notes of Rule 4(f)(3) do not support Plaintiffs' request.

Rule 4(f) addresses service of an individual in a *foreign country* "at a place *not within* any judicial district of the United States" and provides under subsection (3) that such service may be done "by other means not prohibited by international agreement, as the court orders."  Fed. R. Civ. P. 4(f)(3) (emphasis added).  Plaintiffs' proposed service ignores the requirement that the service not be "within" the United States.  Courts have denied requests similar to Plaintiffs' request on this ground alone.  *See Convergen Energy LLC v. Brooks*, No. 20-cv-3746 (LJL), 2020 WL 4038353, at *8-9 (S.D.N.Y. July 17, 2020).

In *Convergen*, for example, the court denied plaintiffs' request to serve defendants "through U.S. counsel via email pursuant to Rule 4(f)(3)," as Plaintiffs request here.  *Id*. at *7.  In denying the motion, the court concluded that "[t]he language of the Federal Rules is clear, and that language does not permit the Court to order alternative service at a place outside any judicial district of the United States when the service would be made in a judicial district of the United States."  *Id*. at *9.  While recognizing that this ruling "may cause a certain inconvenience to a plaintiff and to the courts" (*id.* at *8), the court pointed to a significant public policy weighing against allowing service of foreign defendants through U.S. counsel: "[a]s a general proposition, consultation with counsel facilitates compliance with the law.  The law should encourage foreign individuals and entities to consult with United States counsel," and there "is a public value in

allowing an individual who in good faith seeks such advice to obtain it without simultaneously and automatically appointing counsel as an agent for service of process or relieving any adversary of the otherwise applicable requirements for service of process." *Id*.

More recently, and consistent with *Convergen*'s holding, another court held that "Plaintiff can only avail itself of [Rule 4(f)] if service would occur abroad and '*not within* any judicial district of the United States.'" *Spin Master, Ltd. v. Aomore-US*, No. 23-Civ. 7099 (DEH), 2024 WL 3030405, at *7 (S.D.N.Y. June 17, 2024).[6] As in *Convergen*, the court in *Spin Master* held that service of U.S. counsel was not permitted by Rule 4(f), and the case law to the contrary only addressed "a method of service that entails transmitting documents through U.S. counsel, but only if service is ultimately *completed* abroad [and] comport[s] with the requirements of the Hague convention" or an international agreement. *Id*. Thus, Plaintiffs should not be allowed to serve U.S. counsel pursuant to Rule 4(f)(3).

Rule 4(f)(3) authorizes service in a manner that is not prohibited by international agreements, as the court orders. While the decision on service "by other means" lies within the discretion of the court, *see Halvorssen v. Simpson*, 328 F.R.D. 30, 34 (E.D.N.Y. 2018), the Advisory Committee Notes caution that "an earnest effort should be made to devise a method of communication that is consistent with due process and *minimizes offense to foreign law*." *See* Fed. R. Civ. P. 4, sub. (h) (Notice of Advisory Committee on Rule 1993 Amendments). Indeed, courts are "encourage[d] to insist, as a matter of discretion, that a plaintiff attempt to follow foreign law

---

[6] The holding that Rule 4(f) does not apply to attempts at service within the United States is consistent with decisions outside of this Circuit. *See, e.g.*, *Codigo Music, LLC v. Televisa S.A. de C.V.*, No. 15-CIV-21737, 2017 WL 4346968, at *13 (S.D. Fla. Sept. 29, 2017); *Freedom Watch, Inc. v. Org. of Petrol. Exporting Countries (OPEC)*, 107 F. Supp. 3d 134, 137-39 (D.D.C. 2015); *In re Auto. Parts Antitrust Litig.*, No. 16-cv-04003, 2017 WL 10808851, at *2 (E.D. Mich. Nov. 2, 2017).

in its efforts to secure service of process." *Convergen*, 2020 WL 4038353, at *4; *see also In re GLG Life Tech Corp. Sec. Litig.*, 287 F.R.D. 262, 266 (S.D.N.Y. 2012) (Mot. at 5). Here, Plaintiffs' proposed service is contrary to Qatari law and would thus offend foreign law, in addition to rendering any potential judgment unenforceable. *See supra* Part I.[7] *See also In re Graña y Montero S.A.A. Sec. Litig.*, No. CV 17-1105 (JMA) (ARL), 2019 WL 259778, at *3 (E.D.N.Y Jan. 9, 2019), *report and recommendation adopted*, 2019 WL 1046627 (E.D.N.Y. Mar. 5, 2019) (collecting cases and holding that service under Rule 4(f)(3) must not be inconsistent with an international agreement and must comport with due process).

Plaintiffs' Motion does not address any of these issues and instead relies on case law that is inapposite. *See, e.g.*, *Zhang v. Baidu.com Inc.*, 293 F.R.D. 508, 510 (S.D.N.Y 2013) (motion granted only after "Plaintiffs originally tried to serve [foreign corporate defendants] through the Chinese Ministry of Justice"); *GLG Life*, 287 F.R.D. at 267 (defendant "ha[d] voluntarily and closely associated himself with a non-Chinese entity that is already a served co-defendant" in the same action); *Wash. State Inv. Bd. v. Odebrecht S.A.*, No. 17 Civ. 8118 (PGG), 2018 WL 6253877, at *1 (S.D.N.Y. Sept. 21, 2018) (American counsel was also representing all three of defendant's served subsidiaries in the same case); *Ehrenfeld v. Salim a bin Mahfouz*, No. 04 Civ. 9641(RCC), 2005 WL 696769, at *1, 3 (S.D.N.Y. Mar. 23, 2005) (plaintiff first retained an international

---

[7] The Advisory Committee Notes also illustrate the kinds of examples that would permit alternative service, none of which is present here. "The Hague Convention, for example, authorizes special forms of service in cases of urgency if convention methods will not permit service within the time required by the circumstances. Other circumstances that might justify the use of additional methods include the failure of the foreign country's Central Authority to effect service within the six-month period provided by the Convention, or the refusal of the Central Authority to serve a complaint seeking punitive damages or to enforce the antitrust laws of the United States. In such cases, the court may direct a special method of service not explicitly authorized by international agreement if not prohibited by the agreement." *See* Fed. R. Civ. P. 4, sub. (h) (Notice of Advisory Committee on Rule 1993 Amendments).

process service to address alternative service before court allowed alternative service, including postal service overseas); *In re TFT-LCD Antitrust Litig.*, Nos. M 07–1827 SI, C 10–4945 SI, 2011 WL 845882, at *1, *3 (N.D. Cal. Mar. 8, 2011) (MDL proceeding in which U.S. counsel had already appeared); *Prediction Co. v. Rajgarhia*, No. 09 Civ. 7459(SAS), 2010 WL 1050307, at *2 (S.D.N.Y. Mar. 22, 2010) (alternative service only permitted after plaintiff "show[ed] that it ha[d] made a reasonable effort to effectuate service" to warrant Court intervention and ordered separate service on defendant directly); *Wei Su. v. Sotheby's, Inc.*, No. 17-CV-4577 (VEC), 2018 WL 4804675, at *3 (S.D.N.Y. Oct. 3, 2018) (parties had made "extensive efforts" to serve third-party defendants by other means).

III.     **Alternative Service Is Improper Where Plaintiffs Have Failed to Attempt Any Service**

Plaintiffs' motion must be denied because they have not even *attempted* service, which is a prerequisite to alternative service.  Before authorizing alternative service under Rule 4(f)(3), courts within this circuit generally require "(1) a showing that the plaintiff has reasonably attempted to effectuate service on the defendant, and (2) a showing that the circumstances are such that the court's intervention is necessary." *Noble Sec., Inc. v. Ingamar Co.*, No. 21-CV-1372 (MKB), 2021 WL 2012508, at *5 (E.D.N.Y. May 20, 2021) (collecting cases); *accord Fabbro v. Balke*, No. 19-CV-5764-ENV-SJB, 2020 WL 3525692, at *2 (E.D.N.Y. June 29, 2020) (granting Rule 4(f)(3) motion where three attempts were made to serve defendant personally overseas).  This requirement to make *some* effort to effect service prior to seeking a court's intervention under Rule 4(f)(3) serves "to prevent parties from whimsically seeking alternate means of service." *Madu, Edozie & Madu, P.C. v. SocketWorks Ltd. Nigeria*, 265 F.R.D. 106, 115 (S.D.N.Y. 2010) (citation omitted).  Here, Plaintiffs have made no effort whatsoever to attempt service on these Qatari

Defendants under Rule 4(f)(2) – in fact, they have not even sent a waiver of service form under Rule 4(d)(1).  *See* Fed. R. Civ. P. 4(d)(1).[8]

While Plaintiffs seek to leapfrog over legal requirements because of alleged delay in the Letters Rogatory process – despite their admission that the process has previously taken less time than anticipated by the State Department, even during a pandemic – Plaintiffs' "'desire to move quickly,' without more, does not establish necessity," especially where, as here, Plaintiffs have "exhibited no interest in expedience."  *Wrinkled Surface Enters. LLC v. Gurianov*, No. 19-CV-8882 (JPO), 2021 WL 142280, at *3 (S.D.N.Y. Jan. 15, 2021) (quoting *Baliga on Behalf of Link Motion Inc. v. Link Motion Inc.*, 385 F. Supp. 3d 212, 220 (S.D.N.Y. 2019)) (rejecting plaintiff's request to serve by mail or email and requiring service pursuant to the Hague Convention where plaintiff first attempted service "nearly three months after filing the complaint" and then waited nine months).  Plaintiffs here waited until two days before the expiration of the 10-year statute of limitations to file suit.  And in the three months since filing suit, they have made no attempt to serve Defendants, other than sending emails to counsel.  Plaintiffs cannot suddenly claim that time is of the essence.  Even where service by Letters Rogatory could present a six- to twelve-month delay, "alternative service pursuant to Rule 4(f)(3) is not warranted where Plaintiffs have failed to make any effort on their own to effectuate service."  *In re* Graña, 2019 WL 259778, at *6; *see also FingerMotion, Inc. v. Capybara Rsch.*, No. 23-CV-9212 (JPC) (KHP), 2024 WL 81818, at *3 (S.D.N.Y. Jan. 8, 2024) (declining to decide whether service by email was permitted where plaintiff had not "made an effort to serve . . . through Brazil's Central Authority," recognizing

---

[8] Plaintiffs argue that service under Rule 4(f)(1) and Rule 4(f)(2) are not "practical."  Mot. at 9-10.  But it is not enough to have "demonstrated the possible difficulty of serving" by proper means if no such service is attempted.  *See Halvorssen*, 328 F.R.D. at 35 (rejecting plaintiff's request for alternative service under Rule 4(f)(3) and requiring plaintiff to attempt service through the Hague Convention).  Indeed, Plaintiffs have previously accomplished service via Letters Rogatory.

"there may be some delay in service through this method . . . [but] the time could be as short as nine months").  Plaintiffs' sudden urgency, over ten years after the incident allegedly giving rise to the action and three months after filing the complaint, is no reason to excuse Plaintiffs from complying with the law.

## IV.    Plaintiffs' Motion Is Moot Because Dismissal Is Required

Because Plaintiffs inexcusably failed to even attempt service within 90 days as required by the Federal Rules of Civil Procedure, the present motion – both for alternative service and for the issuance of Letters Rogatory – should be denied as moot and the complaint dismissed.

Rule 4(m) requires service within 90 days of filing a complaint.  Fed. R. Civ. P. 4(m).  "If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—*must dismiss the action without prejudice* against that defendant or order that service be made within a specified time."  *Id.* (emphasis added).  Although Rule 4(m) does not apply to service conducted abroad, a plaintiff must, at a minimum, attempt service in the foreign country within 90 days to avail itself of this exception.  *USHA (India), Ltd. v. Honeywell Int'l, Inc.*, 421 F.3d 129, 133-34 (2d Cir. 2005) (dismissing the action as to one defendant where plaintiffs did not attempt service within Rule 4(m) deadline; *see also DEF v. ABC*, 366 F. App'x 250, 253 (2d Cir. 2010) (summary order) (affirming dismissal under Rule 4(m) "where defendants waited two and a half years to attempt service, never effected service, and did not explain why they had not been able to effect service"); *Falvey Cargo Underwriting Ltd. v. Zim Integrated Shipping Servs. Ltd.*, No. 1:19-cv-11495 (LTS) (SDA), 2023 WL 8716888 (S.D.N.Y. Nov. 30, 2023), *report and recommendation adopted*, 2024 WL 3373368 (S.D.N.Y. July 11, 2024) (dismissing action where the plaintiffs failed to effectuate overseas within 90 days).  As detailed above, it is undisputed that Plaintiffs did not attempt service within 90 days, and,

moreover, that Plaintiffs failed to ask the Court for an extension. *See Bank of Cape Verde v. Bronson*, 167 F.R.D. 370, 372 (1996) (granting extension because plaintiff "sought an extension of the time for service before expiration of the time period," but noting that "good cause will not be found, despite settlement efforts, where no extension application is made before expiration of the time period for service"). These failures compel dismissal of the Complaint without prejudice. Fed. R. Civ. P. 4(m).

Defendants anticipate that Plaintiffs will argue that good cause exists to excuse their failure to comply with the law. They would be wrong. To demonstrate good cause, a plaintiff bears a "heavy burden" to show it could not effect timely service due to "circumstances beyond its control," and courts should excuse said failure only in "exceptional circumstances." *Falvey*, 2023 WL 8716888, at *5 (citations omitted); *Ping Chen ex rel. U.S. v. EMSL Analytical, Inc.*, 966 F. Supp. 2d 282, 306 (S.D.N.Y. 2013). Plaintiffs cannot meet this heavy burden of proof. Their delay here is entirely their own doing. Nothing, let alone exceptional circumstances beyond their control, prevented them from completing service, or even attempting service overseas, within 90 days. And "[a]ttorney error does not constitute good cause under Rule 4(m)." *Counter Terrorist Grp. U.S. v. N.Y. Mag.*, 374 F. App'x 233, 235 (2d Cir. 2010) (summary order); *Ping Chen*, 966 F. Supp. 2d at 306.[9]

Nor did Plaintiffs seek in their motion a *nunc pro tunc* extension and cannot raise it now on reply. *See Meyer v. Seidel*, 89 F.4th 117, 128 (2d Cir. 2023) ("An issue raised for the first time only in a reply brief has been waived.") (citations omitted). As noted above, Plaintiffs cannot

---

[9] As noted herein, Plaintiffs *rejected* Defendants' consent to Plaintiffs request for intervention in an existing case, *Force*, despite initiating communications with defense counsel regarding that request. And in rejecting their own proposal that would have conserved judicial resources, Plaintiffs represented that they were "unwilling to delay effectuating service" – but that is exactly what they did here. *See supra,* Relevant Facts Part E.

demonstrate good cause, nor can they argue attorney error as a basis for good cause. "At minimum, before granting an extension of time to serve absent a showing of good cause, a district court should assess whether the plaintiff has advanced some colorable excuse for his neglect of Rule 4(m)'s time limit." *Falvey*, 2023 WL 8716888, at *6 (alterations in original) (internal quotations marks and citations omitted).

The four factors that would normally be considered to assess good cause are not even applicable here, where Plaintiffs never made the request. Courts addressing such extensions, when made, consider: "(1) whether the applicable statute of limitations would bar [a] refiled action; (2) whether the defendant had actual notice of the claims asserted in the complaint; (3) whether the defendant had attempted to conceal the defect in service; and (4) whether the defendant would be prejudiced by the granting of plaintiff's request for relief from the provision." *Id*. (citations omitted). While Plaintiffs likely have a statute of limitations issue, the remaining factors weigh against any dispensation of the rules even if Plaintiffs had requested such an extension.

First*,* while Plaintiffs devote pages to their argument regarding actual notice, "the law requires more than actual notice." *Spin Master*, 2024 WL 3030405, at *9 (*quoting Zhang v. Baidu.com Inc.*, 932 F. Supp. 2d 561, 567 (S.D.N.Y 2013)).

Second, Defendants made no effort to conceal Plaintiffs' defect in service. To the contrary, on September 30, 2024—within the 90-day deadline—defense counsel informed Plaintiffs that Defendants would not agree to email service and would insist on "proper service consistent with the Federal Rules of Civil Procedure, Letters Rogatory, and Qatari law." Rocco Decl. Ex. 4 at 1. Defense counsel went a step further and pointed out that Plaintiffs had not even attempted service. *Id*. Plaintiffs had more than two weeks to attempt service. But instead, they ignored Defendants' warning and request to comply with the law, and utterly failed to initiate service within 90 days.

The Court should not excuse that failure.

Finally, exempting the Plaintiffs from their requirements would prejudice Defendants as they would be required to "defend[] an action after both the original service period and the statute of limitations have passed before service." *Zapata v. City of New York*, 502 F.3d 192, 198 (2d Cir. 2007). Given that more than a decade has elapsed since the alleged acts, mounting a defense will be a daunting task as memories fade with the passage of time and locating witnesses becomes even more difficult. Moreover, as noted above, these cases are legally deficient yet cause significant reputational harm, as demonstrated when QC and QNB previously established that certain counsel for Plaintiffs relied on fabricated documents for baseless allegations against them. For these reasons, the Court should dismiss this action pursuant to Rule 4(m) and deny any request for an exemption raised on reply. *See Falvey*, 2023 WL 8716888, at *8 (refusing to grant an extension even though that refusal barred a refiled action as the prejudice from locating relevant witnesses and faded memories outweighed the first two factors).

## CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Alternative Service should be denied.

Dated: October 30, 2024
New York, New York

PILLSBURY WINTHROP SHAW PITTMAN LLP

By: */s/ Carolina A. Fornos*
Carolina A. Fornos
Christopher C. Caffarone
Pillsbury Winthrop Shaw Pittman LLP
31 West 52nd Street
New York, NY 10019-6131
Tel.: 212.858.1000
Carolina.Fornos@pillsburylaw.com
Chris.Caffarone@pillsburylaw.com
*Counsel for Masraf Al Rayan*

By: */s/ Michael G. McGovern*
Michael G. McGovern
ROPES & GRAY LLP
1211 Avenue of the Americas
New York, NY 10036-8704

Tel.: 212.596.9000
Michael.McGovern@ropesgray.com

Douglas Hallward-Driemeier
2099 Pennsylvania Avenue, NW
Washington, DC 20006-6807
Tel. 202.508.4600
Douglas.Hallward-
Driemeier@ropesgray.com

*Counsel for Qatar National Bank, Q.P.S.C.*

By: <u>*/s/ Kevin Walsh*</u>

Kevin Walsh
John M. Hillebrecht
DLA Piper
1251 Avenue of the Americas
New York, NY 10020-1104
Tel: 212.335.4500
Kevin.Walsh@us.dlapiper.com
John.Hillebrecht@us.dlapiper.com

*Counsel for Qatar Charity*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

STUART E. STEINBERG, Individually and as
Special Administrator of the ESTATE OF MAX
D. STEINBERG, EVIE R. STEINBERG, PAIGE
P. TEREN and JAKE R. STEINBERG,

                          Plaintiffs,

     - against -

QATAR CHARITY, QATAR NATIONAL
BANK and MASRAF AL RAYAN,

                        Defendants.

Case No. 24-cv-4999-ENV-SJB

**CERTIFICATE OF SERVICE**

      I, Carolina A. Fornos, hereby certify that on October 30, 2024, I caused to be served a true and correct copy of Defendants' Opposition to Plaintiffs' Motion for Order Authorizing Service of Process Pursuant to Rule 4(f)(3) Or, Alternatively, For Issuance of Letters Rogatory, to the following via email as per the Court's Order of October 11, 2024:

Susan M. Davies
SDavies@fbrllp.com

James P. Bonner
JBonner@fbrllp.com

Patrick L. Rocco
PRocco@fbrllp.com

Dated: October 30, 2024
      New York, New York

PILLSBURY WINTHROP SHAW PITTMAN LLP

By: */s/ Carolina A. Fornos*
      Carolina A. Fornos
      31 West 52nd Street
      New York, NY 10019-6131
      Tel.: 212.858.1000
      Fax: 212.858.1500
      *Counsel for Masraf Al Rayan*