UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------------- X
STUART E. STEINBERG, Individually and as Special
Administrator of the ESTATE OF MAX D.
STEINBERG, EVIE R. STEINBERG, PAIGE P. TEREN
and JAKE R. STEINBERG,

                             Plaintiffs,

                    -against-

QATAR CHARITY, QATAR NATIONAL BANK and
MASRAF AL RAYAN,

                           Defendants.
---------------------------------------------------------------------- X

Case No. 24-CV-4999-ENV-SJB

Served on November 6, 2024


**PLAINTIFFS' MEMORANDUM OF LAW IN FURTHER SUPPORT
OF MOTION FOR RULE 4(f)(3) SERVICE OR LETTERS ROGATORY,
AND IN OPPOSITION TO DEFENDANTS' CROSS-MOTION TO DISMISS**

FLEISCHMAN BONNER & ROCCO LLP
James P. Bonner (jbonner@fbrllp.com)
Patrick L. Rocco (procco@fbrllp.com)
Susan M. Davies (sdavies@fbrllp.com)
445 Hamilton Avenue, Suite 402
White Plains, New York 10601
(908) 516-2066

*Counsel for Plaintiffs*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES.................................................................................................. ii

PRELIMINARY STATEMENT ...........................................................................................1

ARGUMENT .......................................................................................................................2

I.   DEFENDANTS HAVE EFFECTIVELY CONCEDED THAT SERVICE ON THEIR U.S.
     COUNSEL MEETS ALL OF THE REQUIREMENTS FOR AN ORDER UNDER RULE 4(f)(3).................2

     A.  Contrary to Defendants' Contention, There Is
         No Requirement That Plaintiffs Must First Attempt Service
         by Letters Rogatory Before Seeking an Order Under Rule 4(f)(3) .....................................3

     B.  Contrary to Defendants' Contention, There Is No Requirement That
         the Method of Service Under Rule 4(f)(3) Must Comport With Qatari Law ......................6

     C.  Contrary to Defendants' Contention, the Length of Time Letters
         Rogatory Service Will Likely Take Suffices to Justify Alternative Service .......................8

     D.  Defendants' Mischaracterization of the Aberrant *Convergen*
         Decision Highlights the Meritlessness of Their Opposition................................................9

     E.  Defendants' *Ad Hominem* Attacks on Plaintiffs' Counsel Misrepresent
         the Procedural History of the Other U.S. Litigations Against Defendants.........................11

II.  THE COURT SHOULD REJECT DEFENDANTS' REQUEST TO DISMISS THE COMPLAINT ...............13

     A.  The Court Should Disregard Defendants' Procedurally
         Defective Cross-Motion to Dismiss the Complaint ........................................................13

     B.  Because the Foreign Country Service Exception to Rule 4(m) Applies
         Here, Plaintiffs Are Not Required To Serve Defendants Within 90 Days....................13

CONCLUSION..................................................................................................................15

**Cases**

*Azkour v. Haouzi*,
2012 WL 4832811 (S.D.N.Y. Sept. 28, 2012)............................................................... 13

*Balinga v. Link Motion Inc.*,
385 F. Supp. 3d 212 (S.D.N.Y. 2019)........................................................................ 9

*Convergen Energy LLC v. Brook*,
2020 WL 4038353 (S.D.N.Y. July 17, 2020) ........................................................ 9, 10, 11

*DEF v. ABC*,
366 F. App'x 250 (2d Cir. 2010) ............................................................................. 15

*Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*,
2014 WL 684831 (S.D.N.Y. Feb. 21, 2014)............................................................ 8

*Export-Import Bank of U.S. v. Asia Pulp & Paper Co.*,
2005 WL 1123755 (S.D.N.Y. May 11, 2005) ......................................................... 6

*Fabbro v. Balke*,
2020 WL 3525692 (E.D.N.Y. June 29, 2020) ......................................................... 4

*Falvey Cargo Underwriting Ltd. v. Zim Integrated Shipping Servs. Ltd.*,
2023 WL 871688 (S.D.N.Y. Nov. 30, 2023) .......................................................... 15

*FingerMotion, Inc. v. Capybara Research*,
2024 WL 81818 (S.D.N.Y. Jan. 8, 2024) ............................................................... 4, 9

*Freedom Watch, Inc. v. Org. of the Petroleum Exporting Countries*,
766 F.3d 74 (D.D.C. 2014) ...................................................................................... 6

*Group One Ltd v. GTE GMBH*,
523 F. Supp. 3d 323 (E.D.N.Y. 2021) .................................................................... 2

*Hailoo v. Disability RMS*,
2015 WL 7575906 (E.D.N.Y. Nov. 25, 2015)......................................................... 13

*Halvorssen v. Simpson*,
328 F.R.D. 30 (E.D.N.Y. 2018)............................................................................... 4

*Henkin v. Qatar Charity*,
2023 WL 2734788 (E.D.N.Y. Mar. 31, 2023)......................................................... 12

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
    27 F. Supp. 3d 1002 (N.D. Cal. 2014) ........................................................................... 10

*In re Fairfield Sentry Ltd.*,
    2020 WL 7345988 (Bankr. S.D.N.Y. Dec. 14, 2020) ...................................................... 9

*In re Graña Montero S.A.A. Sec. Litig.*,
    2019 WL 259778 (E.D.N.Y. Jan. 9, 2019) ................................................................... 3, 4

*In re The Richmond Group, Inc.*,
    2017 WL 4221099 (Sept. 21, 2017) ................................................................................ 8

*Khan Funds Mgmt. America, Inc. v. Nations Technologies Inc.*,
    2024 WL 3013759 (S.D.N.Y. June 13, 2024) ........................................................... 3, 4, 9

*Moskovits v. Fed. Republic of Brazil*,
    2024 WL 3299802 (S.D.N.Y. June 4, 2024) ................................................................. 14

*Mullane v. Cent. Hanover Bank & Trust Co.*,
    339 U.S. 306 (1950) ........................................................................................................ 2

*Noble Security, Inc. v. Ingamar Co.*,
    2021 WL 3012508 (E.D.N.Y. May 20, 2021) ................................................................. 3

*Prediction Co. v. Rajgarhia*,
    2010 WL 1050307 (S.D.N.Y. Mar. 22, 2010) ............................................................... 14

*Przewozman v. Qatar Charity,*
    2023 WL 2562537 (E.D.N.Y. Mar. 17, 2023) ............................................................... 12

*Restoration Hardware, Inc. v. Lighting Design Wholesalers, Inc.*,
    2020 WL 4497160 (S.D.N.Y. Aug. 5, 2020) ................................................................... 6

*Rio Properties, Inc. v. Rio Int'l Interlink*,
    284 F.3d 1007 (9th Cir. 2002) .................................................................................... 4, 6

*RSM Prod. Corp. v. Fridman*,
    2007 WL 2295907 (S.D.N.Y. Aug. 10, 2007) ............................................................... 11

*Spin Master, Ltd. v. Aomore-US*,
    2024 WL 3030405 (S.D.N.Y. June 17, 2024) ................................................................. 9

*U.S. v. Koehler Oberkirch GmbH*,
    __ F. Supp. 3d __, 2024 WL 3887285 (S.D.N.Y. Aug. 21, 2024) .............................. 9, 10

*U.S. v. Mrvic,*
    652 F. Supp. 3d 409 (S.D.N.Y. 2023) ......................................................................... 9, 10

*USHA (India), Ltd. v. Honeywell Int'l, Inc.*,
    421 F.3d 129 (2d Cir. 2005)................................................................................... 15

*Vega v. Hastens Beds, Inc.*,
    342 F.R.D. 61 (S.D.N.Y. 2022) ........................................................................... 10

*Washington State Inv. Board v. Odebrecht S.A.*,
    2018 WL 6253877 (S.D.N.Y. Sept. 21, 2018)............................................. 3, 7, 10

*Wrinkled Surface Enters LLC v. Gurianov*,
    2021 WL 142280 (S.D.N.Y. Jan. 15, 2021) ......................................................... 8

*Zhang v. Baidu.com Inc.*,
    293 F.R.D. 508 (S.D.N.Y. 2013) ..................................................................... 6, 11

**Rules**

Fed. R. Civ. P. 4(f)................................................................................... 3, 6, 8, 9, 10

Fed. R. Civ. P. 4(f)(1) ............................................................................................. 4

Fed. R. Civ. P. 4(f)(2)(A).................................................................................... 6, 8

Fed. R. Civ. P. 4(f)(2)(B).................................................................................... 8, 14

Fed. R. Civ. P. (f)(2)(C) ........................................................................................ 6

Fed. R. Civ. P. 4(f)(3) ..................................................................................... passim

Fed. R. Civ. P. 4(m) .................................................................................. 1, 13, 14, 15

Fed. R. Civ. P. 6(a) .............................................................................................. 14

**Other Authorities**

Fed. R. Civ. P. 4 Advisory Committee Note on 1993 Amendment................................. 8

U.S. Department of State, Preparation of Letters Rogatory ..................................... 1, 5

Plaintiffs respectfully submit this memorandum of law in further support of their motion

for: (1) an order pursuant to Fed. R. Civ. P. 4(f)(3) authorizing service of process, together with

an Arabic translation of same, on Defendants' U.S. Counsel;[1] or, alternatively, for (2) issuance of

letters rogatory; and in opposition to Defendants' procedurally defective cross-motion for

dismissal of the Complaint.

## PRELIMINARY STATEMENT

As detailed below, Defendants' opposition to Plaintiffs' request for alternative service is

replete with misstatements of the applicable law, and misrepresentations concerning the

procedural history of this and the other litigations against Defendants. Most significantly,

Defendants' opposition is devoid of any evidence or argument that contradicts Plaintiffs'

demonstration that the only two prerequisites for obtaining relief under Rule 4(f)(3) are fully

satisfied here. First, Defendants identify no international agreement that prohibits the method of

service Plaintiffs propose, because there is none. Second, Defendants concede that service on

their U.S. Counsel will apprise them of the pendency of this action and will give them the

opportunity to present their defenses, which is all that due process requires. Moreover,

alternative service is justified here because the only other service option is letters rogatory,

which will likely "take a year or more."[2] Hence, the Court should exercise its discretion to

authorize Plaintiffs to serve the summons and complaint on Defendants' U.S. Counsel.

Defendants' procedurally defective cross-motion seeking dismissal of Plaintiffs'

Complaint pursuant to Fed. R. Civ. P. 4(m) grossly misrepresents the procedural history of this

action by nonsensically asserting that—despite having moved for an order authorizing alternative

---

[1] Defendants' U.S. Counsel are identified in the October 16, 2024 Declaration of Patrick L. Rocco ("Rocco Decl.") at ¶¶ 8-11.

[2] U.S. Department of State, Preparation of Letters Rogatory (Rocco Decl. Ex. 6) at 2.

service or issuance of letters rogatory—Plaintiffs' counsel have made no efforts to serve the

Defendants. Defendants' cross-motion should be dismissed for procedural irregularities, or

denied as meritless.

**ARGUMENT**

**I. DEFENDANTS HAVE EFFECTIVELY CONCEDED THAT SERVICE ON THEIR U.S. COUNSEL MEETS ALL OF THE REQUIREMENTS FOR AN ORDER UNDER RULE 4(f)(3)**

Despite baldly asserting that service on their U.S. counsel would be "contrary to due

process" (Opp. Mem. at 6), Defendants make no reference to what due process actually requires

in these circumstances, which is merely "that the alternative means of service be 'reasonably

calculated, under all the circumstances, to apprise interested parties of the pendency of the action

and afford them an opportunity to present their objections.'" *Group One Ltd v. GTE GMBH*, 523

F. Supp. 3d 323, 344 (E.D.N.Y. 2021) (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339

U.S. 306, 314 (1950)). As Plaintiffs have amply demonstrated—and Defendants do not, and

cannot, deny—service of process on the U.S. lawyers who are currently representing Defendants

in two other actions pending in this District, and who have been communicating with Defendants

about this particular lawsuit for over three months, is reasonably calculated—indeed, certain—to

bring the *Steinberg* Complaint to Defendants' attention. *See* Plaintiffs' October 16, 2024

Memorandum of Law ("Plaintiffs' Mem.") at 3-5, 8-9; Rocco Decl. at ¶¶ 8-20 and Ex. 4.

Defendants' appearance to oppose the instant motion confirms that fact. Judge Middlebrooks

reached the same conclusion regarding service on the same U.S. counsel for Defendants Qatar

Charity and Qatar National Bank. *See Sotloff v. Qatar Charity*, No. 9:22-cv-8072-DMM (Dec. 1,

2022) at 5 (Rocco Decl. Ex. 5) ("[T]here is no doubt that Defendants will receive notice of this

action."). Incontestably, therefore, the method of service Plaintiffs propose here comports with

due process.

Beyond that, Rule 4(f)(3) requires only that service on Defendants' U.S. Counsel is "not

prohibited by international agreement." Fed. R. Civ. P. 4(f)(3); *see also* Plaintiffs' Mem. at 7;

*Washington State Inv. Board v. Odebrecht S.A.*, 2018 WL 6253877, at \*4 (S.D.N.Y. Sept. 21,

2018) (*cited in* Opp. Mem. at 10) ("Service under Rule 4(f)(3) is proper as long as it (1) is not

prohibited by international agreement; and (2) comports with constitutional notions of due

process.") (internal quotations omitted); *Khan Funds Mgmt. America, Inc. v. Nations*

*Technologies Inc*., 2024 WL 3013759, at \*5 (S.D.N.Y. June 13, 2024) ("The Court will approve

[alternative] service if it (1) is not prohibited by international agreement; and (2) comports with

constitutional notions of due process.") (internal quotation omitted). Defendants point to no

international agreement that prohibits the Court from ordering service on Defendants' U.S.

Counsel, because there is none. Plaintiffs proposed method of service therefore satisfies all of

the requirements of Rule 4(f)(3).

Nevertheless, Defendants have seen fit to burden this Court with 16 pages of briefing

concerning non-existent, supposed prerequisites to obtaining alternative service under

Rule 4(f)(3), other misstatements of the applicable law, and mischaracterizations of the merits of

Plaintiffs' claims under the Anti-Terrorism Act. As explained below, Defendants' numerous

objections to Plaintiffs' request for alternative service are meritless.

A. **Contrary to Defendants' Contention, There Is No Requirement That Plaintiffs Must First Attempt Service by Letters Rogatory Before Seeking an Order Under Rule 4(f)(3)**

Contrary to Defendants' contention, it is well-settled that "a plaintiff is not required to

attempt service through the other provisions of Rule 4(f) before the court may order service

pursuant to Rule 4(f)(3)." *Noble Security, Inc. v. Ingamar Co.*, 2021 WL 3012508, at \*4

(E.D.N.Y. May 20, 2021) (*cited in* Opp. Mem. at 11). *See also In re Graña y Montero S.A.A.*

*Sec. Litig.*, 2019 WL 259778, at \*3 (E.D.N.Y. Jan. 9, 2019) (*cited in* Opp. Mem. at 12) (same);

Plaintiffs' Mem. at 6. "[S]ervice under Rule 4(f)(3) is as favored as service available under

Rule 4(f)(1) or Rule 4(f)(2) [which includes service by letters rogatory]…. Rule 4(f)(3) includes

no qualifiers or limitations which indicate its availability only after attempting service of process

by other means." *Rio Properties, Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1015 (9th Cir. 2002)

(rejecting argument that plaintiff must first attempt service by letters rogatory before petitioning

for alternative relief under Rule 4(f)(3)).

     As support for their contrary contention, Defendants cite inapposite cases in which some

courts have conditioned the exercise of their discretion under Rule 4(f)(3) on a showing that the

plaintiff first attempted to effectuate service pursuant to the Hague Convention on the Service

Abroad of Judicial and Extrajudicial Documents.  *See* Opp. Mem. at 11-13.[3]  "This requirement

has be[en] engrafted on to Rule 4(f)(3) to ensure that parties do not avoid the requirements of the

Hague Convention and instead, whimsically seek an order of alternative service."  *Halvorssen*,

328 F.R.D. at 34 (*cited in* Opp. Mem. at 12 n.8).  *Accord In re Graña*, 2019 WL 259778, at *3

n.1 (*cited in* Opp. Mem. at 12) ("[The] line of cases suggesting that plaintiff must attempt service

through diplomatic channels before seeking alternative service were decided with respect to

service in countries governed by the Hague Convention."); *Khan Funds*, 2024 WL 3013759, at

*4 ("In cases involving service on a person in a country that is a signatory to the Hague

Convention, courts have often imposed a requirement that litigants first attempt service by means

of the Hague Convention before seeking court-ordered alternative service under [Rule] 4(f)(3).")

(internal quotation omitted). As it is undisputed that Qatar is not a party to the Hague Service

---

[3] Citing *Halvorssen v. Simpson*, 328 F.R.D. 30, 35 (E.D.N.Y. 2018) (court invited plaintiff to renew his unsuccessful Rule 4(f)(3) motion if service in Venezuela pursuant to the Hague Convention took more than six months); *Fabbro v. Balke*, 2020 WL 3525692, at *2 (E.D.N.Y. June 29, 2020) (prior to ordering alternative service pursuant to Rule 4(f)(3), court considered plaintiff's prior attempts to serve Canadian defendant pursuant to the Hague Convention); *FingerMotion, Inc. v. Capybara Research*, 2024 WL 81818, at *3 (S.D.N.Y. Jan. 8, 2024) (Rule 4(f)(3) motion denied because plaintiff had not first attempted to serve Brazilian defendant pursuant to the Hague Convention).  Defendants also cite *In re Graña*, 2019 WL 259778, at *4, which involved service in Peru pursuant to the Inter-American Convention rather than the Hague Convention.

Convention (*see* Opp. Mem. at 5), the cases Defendants cite provide no support for their contention that Plaintiffs must first attempt to serve Defendants via letters rogatory before they can seek an order under Rule 4(f)(3).

Given Defendants' acknowledgement that Plaintiffs' only other option for serving them is via letters rogatory (*see* Opp. Mem. at 6), it makes no sense for Defendants to accuse Plaintiffs of "burdening the Court" with a motion for alternative service without first attempting that alternative. *See id*. at 4, 8.   If granted, Plaintiffs' alternative motion for letters rogatory will impose far greater burdens on this Court, and others.  Whereas the Court can dispose of Plaintiffs' Rule 4(f)(3) motion by issuing a minute order via ECF, letters rogatory must bear the Court's seal and Judge Vitaliano's signature.  *See* Plaintiffs' Mem. at 12; Rocco Decl. at ¶ 29 and Ex. 6 at 3.  The Clerk of Court must then prepare exemplified copies of the Summons and Complaint to accompany the letters rogatory.  *See id*. at 13; Rocco Decl. at ¶ 29.  The U.S. Department of State must then transmit the letters rogatory and service documents, through diplomatic channels, to the Qatari government for further transmittal to the appropriate Qatari court, for service in accordance with Qatari laws and regulations.  *See* Rocco Decl. Ex. 6 at 3-5. Once that service has been effectuated, the executed letters rogatory with proofs of service must be returned by the Qatari government to the U.S. Department of State, and then to this Court. *See id*. at 6.

If Defendants were genuinely concerned about avoiding burdening this Court, they would have agreed to waive formal service as Plaintiffs have repeatedly asked them to do.  *See* Plaintiffs' Mem. at 4; Rocco Decl. at ¶¶ 17-20.  Instead, they insist upon a long, expensive process that will inevitably result in the same counsel appearing for the same defendants over a year from now.

**B. Contrary to Defendants' Contention, There Is No Requirement That the Method of Service Under Rule 4(f)(3) Must Comport With Qatari Law**

Defendants repeatedly assert—without evidence or explanation—that this Court cannot authorize service on their U.S. Counsel because such service is supposedly contrary to Qatari law. *See* Opp. Mem. at 7, 10. *See also id.* at 4 (quoting Masraf Al Rayan's counsel admonishing Plaintiffs' counsel that "proper service" must be consistent with, *inter alia*, Qatari law). This is another of the imaginary "requirements" Defendants seek to graft onto Rule 4(f)(3). As the text of Rule 4(f) makes clear,[4] and courts have consistently held, "'service of process ordered under Rule 4(f)(3) may be accomplished in contravention of the laws of the foreign country.'" *Export-Import Bank of U.S. v. Asia Pulp & Paper Co.*, 2005 WL 1123755, at *4-5 (S.D.N.Y. May 11, 2005) (quoting *Rio Properties*, 284 F.3d at 1014, and authorizing *nunc pro tunc* service on Indonesian defendant by international courier in violation of Indonesian service requirements because "any offense to that country's sovereignty is minimal"); *see also Restoration Hardware, Inc. v. Lighting Design Wholesalers, Inc.*, 2020 WL 4497160, at *9 n.11 (S.D.N.Y. Aug. 5, 2020) ("'[T]he district court retains discretion under Rule 4(f)(3) to authorize service ***even if the alternative means would contravene foreign law***.'") (quoting *Freedom Watch, Inc. v. Org. of the Petroleum Exporting Countries*, 766 F.3d 74, 84 (D.D.C. 2014) and adding emphasis); *Zhang v. Baidu.com Inc.*, 293 F.R.D. 508, 510, 514 (S.D.N.Y. 2013) (*cited in* Opp. Mem. at 10) (granting alternative service where, in refusing to effectuate service pursuant to the Hague Convention, China had stated "that such service would infringe its sovereignty"); *Washington State Inv. Board*, 2018 WL 6253877, at *9 (*cited in* Opp. Mem. at 10) (holding that "evidence …

---

[4] *Compare* Rule 4(f)(2)(A) (authorizing service "as prescribed by the foreign country's law") *and* Rule 4(f)(2)(C) (authorizing methods of service that can be used "unless prohibited by the foreign country's law") *with* Rule 4(f)(3) (requiring only that the method of service is "not prohibited by international agreement").

demonstrat[ing] that any method of service other than letters rogatory would offend Brazilian law" was "outweighed by Plaintiff's showing of the delay and difficulties associated with obtaining service through letters rogatory"); Plaintiffs' Mem. at 6-7.

In any event, Defendants make no effort to identify any provision of Qatari law that supposedly prohibits the service method Plaintiffs propose. To the contrary, the provisions of Qatari Civil & Commercial Law selectively quoted by Defendants appear to authorize service on Qatari corporations via "'their legal representatives or whoever acts on their behalf'" delivered by "'the police or any other authority appointed … by a court order.'" Opp. Mem. at 5-6 (quoting Articles 2 and 10, Qatari Civil & Commercial Law). *Accord Sotloff v. Qatar Charity* (Rocco Decl. Ex. 5) at 5 (concluding that service via FedEx to defendants' offices in Qatar and e-mail to their counsel in New York was not contrary to Qatari law). Absent proof that Plaintiffs' proposed service method violates Qatari law, the Court should also disregard Defendants' *ipse dixit* assertion that service on Defendants' U.S. Counsel will somehow "offend" the State of Qatar itself. *See* Opp. Mem. at 7.

For the same reason, the Court should reject Defendants' observation that Plaintiffs' proposed method of service "would … potentially result in a judgment that would be ultimately unenforceable in Qatar" (Opp. Mem. at 6) as baseless speculation. *See also Sotloff* (Rocco Decl. Ex. 5) at 6 (concluding that Article 380 of the Qatari Civil & Commercial Law "gives Qatari courts…great latitude, independent of the service of process issue, to decide the enforceability of a foreign judgment"). In any event, Defendants provide no indication of how or why the potential enforceability of any resulting judgment in Qatar should impact Plaintiffs' entitlement to an order for alternative service. Plaintiffs' counsel have been unable to locate a single case in which a court refused to order alternative service because a resulting judgment would not be

enforceable in the defendant's home jurisdiction.[5]

### C. Contrary to Defendants' Contention, the Length of Time Letters Rogatory Service Will Likely Take Suffices to Justify Alternative Service

As Plaintiffs have demonstrated, courts in this Circuit routinely order alternative service

under Rule 4(f)(3) where the other available methods of service are likely to take six months or

more. *See* Plaintiffs' Mem. at 10-11. *Accord* Opp. Mem. at 10 n.7 (quoting Fed. R. Civ. P. 4

Advisory Committee Note on 1993 Amendment at subdivision (f) for the proposition that resort

to Rule 4(f)(3) is appropriate if a Central Authority fails to effect service under the Hague

Service Convention ***within six months***). As Defendants acknowledge, that is unquestionably

the case here, where the best case scenario for letters rogatory service in Qatar is 10 months. *See*

Opp. Mem. at 2. Significantly, Defendants make no attempt to distinguish the numerous cases

Plaintiffs' opening memorandum cites, choosing instead to rely on inapposite decisions in which

courts required the plaintiffs to attempt service pursuant to the Hague Service Convention. *See*

Opp. Mem. at 12-13.[6] As explained above, the preference of some courts for service to be

---

[5] Neither of the cases Defendants cite for their dicta concerning the enforceability of judgments involved such a determination. *See* Opp. Mem. at 6. *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 2014 WL 684831 (S.D.N.Y. Feb. 21, 2014) did not involve an application for alternative service. In the poorly-reasoned decision in *In re The Richmond Group, Inc.*, 2017 WL 4221099, at *4 (Sept. 21, 2017), the U.S. Bankruptcy Court for the W.D.N.Y. erroneously concluded—contrary to well-established authority—that the plaintiff was required to attempt service pursuant to Rule 4(f)(2)(B) (via letters rogatory) and Rule 4(f)(2)(A) (via a means prescribed by the foreign country's law for service in that country) prior to seeking relief under Rule 4(f)(3). *Contra* Point I.A *supra* (plaintiff is not required to attempt service through the other provisions of Rule 4(f) before the court may order service pursuant to Rule 4(f)(3)).

[6] Citing *Wrinkled Surface Enters LLC v. Gurianov*, 2021 WL 142280, at *3 (S.D.N.Y. Jan. 15, 2021) (court refused to approve *nunc pro tunc* service by email and mail on defendants in Ukraine who had the "right to insist on service pursuant to the Hague Convention") (internal quotation omitted); *Balinga v. Link Motion Inc.*, 385 F. Supp. 3d 212, 220 (S.D.N.Y. 2019) (denying Rule 4(f)(3) motion because plaintiff had not first attempted to serve defendant pursuant to the Hague Convention); *FingerMotion*, 2024 WL 81818, at *3 (same).

effectuated pursuant to the Hague Convention has no application here, where that method of service is unavailable. *See* Point IA. at pp. 4-5.

**D. Defendants' Mischaracterization of the Aberrant *Convergen* Decision Highlights the Meritlessness of Their Opposition**

Defendants misleadingly cite to the aberrant decision in *Convergen Energy LLC v. Brooks*, 2020 WL 40388353 (S.D.N.Y. July 17, 2020) as an "example" of how "[c]ourts" have refused to authorize service on foreign defendants' U.S. counsel on the ground that Rule 4(f) only applies to service "at a place not within any judicial district of the United States" and therefore "'does not permit the Court to order alternative service … [to] be made [on U.S. counsel] in a judicial district of the United States.'" Opp. Mem. at 8 (*quoting Convergen*, 2020 WL 40388353, at *9). Far from being exemplary, *Convergen* constitutes the only occasion on which a court in this Circuit has declined to authorize Rule 4(f)(3) service on a foreign defendant's U.S. counsel on this basis, and the decision has been repeatedly rejected as representing a minority view both within this Circuit and nationwide.[7]

Indeed, courts in this Circuit—including in cases upon which Defendants rely[8]—have consistently rejected the *Convergen* court's conclusion that delivery of process to a foreign

---

[7] *See, e.g.*, *U.S. v. Koehler Oberkirch GmbH*, __ F. Supp. 3d __, 2024 WL 3887285, at *6 and n.9 (S.D.N.Y. Aug. 21, 2024) (authorizing service on defendants' U.S. counsel, and noting that *Convergen* "represents the minority position within the federal judiciary"); *U.S. v. Mrvic*, 652 F. Supp. 3d 409, 412-23 (S.D.N.Y. 2023) (same); *Khan Funds*, 2024 WL 3013759 at *5 n.6 (authorizing service on defendant's U.S. counsel, and rejecting *Convergen* as minority view in S.D.N.Y.); *In re Fairfield Sentry Ltd.*, 2020 WL 7345988, at *12 (Bankr. S.D.N.Y. Dec. 14, 2020) (same and collecting contrary S.D.N.Y. authorities).

[8] For example, Defendants mischaracterize the holding in *Spin Master, Ltd. v. Aomore-US*, 2024 WL 3030405 (S.D.N.Y. June 17, 2024) as being "consistent with" *Convergen*. *See* Opp. Mem. at 9. In fact, like every other court within this Circuit that has considered the question, the *Spin Master* court recognized that where service on a foreign defendant's U.S. counsel is authorized under Rule 4(f)(3), "'U.S. counsel is a conduit to the service that is effectuated at a place not within any jurisdiction of the United States.'" 2024 WL 3030405, at *7 (quoting *Mrvic*, 652 F. Supp. 3d at 413).

defendant's U.S. counsel cannot be authorized under Rule 4(f)(3) because it would result in

service being effectuated within the United States. As these courts have recognized, where

service papers are transmitted "'to a foreign defendant via a domestic conduit like a [U.S.] law

firm … ultimately, the foreign individual is served and thereby provided notice outside a United

States judicial district in accordance with Rule 4's plain language.' … [T]he relevant

circumstance is where the defendant is, and not the location of the intermediary." *Washington

State Inv. Board*, 2018 WL 6253877, at \*4 (*cited in* Opp. Mem. at 10) (quoting *In re Cathode

Ray Tube (CRT) Antitrust Litig.*, 27 F. Supp. 3d 1002, 1010 (N.D. Cal. 2014)).[9]  Hence, as

Plaintiffs have already demonstrated, courts in this Circuit routinely order service on foreign

defendants' U.S. counsel pursuant to Rule 4(f)(3). *See* Plaintiffs' Mem. at 7-11.

Defendants also rely upon the universally-distinguished *Convergen* decision for the self-

serving, but ultimately irrelevant, argument that allowing service of process on foreign

defendants' U.S. counsel is "detrimental to public policy" because "'[t]he law should encourage

foreign individuals and entities to consult with United States counsel about their obligations

under United States law.'" Opp. Mem. at 7, 8 (quoting *Convergen*, 2020 WL 4038353, at \*8).

Even if encouraging foreigners to consult with U.S. lawyers is considered a "'public value'" to

be encouraged, (*id.* at 8 (quoting *Convergen*, 2020 WL 4038353, at \*8)), that benefit is not

impaired here. The relationship between Defendants and their U.S. counsel is longstanding and

---

[9] *Accord, e.g., Koehler Oberkirch GmbH,* 2024 WL 3887285, at \*6 ("[S]ervice through U.S. counsel is not service **on** U.S. counsel: the recipient of service is the defendant, and the defendant receives the summons and complaint from its U.S. counsel wherever the defendant is located.") (emphasis in original); *Mrvic*, 652 F. Supp. 3d at 413 ("The U.S. counsel is a conduit to the service that is effectuated 'at a place not within any jurisdiction of the United States.'") (quoting Fed. R. Civ. P. 4(f)); *Vega v. Hastens Beds, Inc.*, 342 F.R.D. 61, 66 (S.D.N.Y. 2022) ("[P]ermitting service on [foreign defendant] through retained United States counsel does not contravene the language of Rule 4(f), since service will be completed outside the United States.").

did not arise out of the need to obtain legal advice in connection with this action. *See, e.g., RSM Prod. Corp. v. Fridman*, 2007 WL 2295907, at *6 (S.D.N.Y. Aug. 10, 2007) (rejecting the same policy argument because the U.S. law firm's relationship with the foreign defendant, whom it had represented "for years in pursuing litigation in another federal district court," was "well established and extend[ed] beyond any limited appearance in this law suit" for the purpose of challenging service); *Zhang v. Baidu.com Inc.*, 293 F.R.D. at 515 (same). Defendants' U.S. Counsel have been representing them for over four years in connection with other litigations pending in this District and the Southern District of Florida. *See* Rocco Decl. at ¶¶ 3-6, 8-11, 13, 21. Clearly, Defendants are not being penalized for having consulted with U.S. lawyers about the *Steinberg* Complaint.

### E. Defendants' *Ad Hominem* Attacks on Plaintiffs' Counsel Misrepresent the Procedural History of the Other U.S. Litigations Against Defendants

In an apparent effort to discourage this Court from exercising discretion in Plaintiffs' favor, Defendants attempt to cast doubt on the substantive merit of Plaintiffs' legal claims—by falsely claiming that "Plaintiffs [k]now [t]hat the Court [l]acks [p]ersonal [j]urisdiction" over Defendants, and by insinuating that Plaintiffs' Complaint is based on forged documents. *See* Opp. Mem. at 2-3. In reality, the dismissal of the *Przewozman* Action for lack of personal jurisdiction has no bearing on whether this Court has jurisdiction. Judge Garaufis concluded that exercising specific personal jurisdiction over Qatar Charity and Masraf Al Rayan would be inconsistent with due process because the temporal nexus between the Defendants' New York-related conduct—which allegedly concluded in 2015—and the terrorist attack in which Pinches Przewozman was killed—which did not occur until May 2019—was too attenuated. *See Przewozman v. Qatar Charity,* 2023 WL 2562537, at *13, 15 (E.D.N.Y. Mar. 17, 2023) ("Without [a sufficient] nexus between the only contacts alleged with the United States and the claims at issue, the court cannot exercise personal jurisdiction consistent with due process."). In

this case, by contrast, Max Steinberg was murdered in 2014, contemporaneously with the Defendants' alleged New-York related conduct. *See Henkin v. Qatar Charity*, 2023 WL 2734788, at *12 (E.D.N.Y. Mar. 31, 2023) (denying Qatar Charity's and Masraf Al Rayan's motions to dismiss, and distinguishing *Przewozman* on the ground that "there is no similar temporal gap with respect to the [*Henkin*] attack, which took place in 2015"). Judge Cogan has yet to rule on Defendants' motions to dismiss the *Force* Action. *See* Rocco Decl. at ¶ 4; Opp. Mem. at 3.

Defendants' assertions regarding the role an allegedly forged document played in the *Sotloff* Action have nothing to do with Plaintiffs' New York counsel in this matter, who were uninvolved in that case. After the *Sotloff* court entered a protective order designed to protect the physical security of witnesses, the *Sotloff* plaintiffs produced to the Defendants a document purporting to be a wire receipt for a transaction between Qatar Charity and a future ISIS judge. When Qatar Charity and Qatar National Bank identified several latent errata in the document, the *Sotloff* plaintiffs immediately investigated this new information at great expense. While neither that investigation nor the Judge Middlebrooks determined the document to be fraudulent, the issues that Qatar Charity and Qatar National Bank had raised caused significant doubts about the *Sotloff* plaintiffs' ability to prevail at trial. Accordingly, the parties jointly moved to dismiss the action.

The document at issue in *Sotloff* involved alleged material support of ISIS, not Hamas, and has never been relied upon by the Plaintiffs in this matter. In the related *Henkin* matter in this District, the Defendants have themselves relied upon the key documents showing ties between Masraf Al Rayan, the U.S. banking system and Qatar Charity (an entity that Israel has designated as a terrorist organization), namely the confession of a Qatar Charity official before an Israeli military tribunal. Defendants have never challenged the authenticity of those

documents.

## II. THE COURT SHOULD REJECT DEFENDANTS' REQUEST TO DISMISS THE COMPLAINT

### A. The Court Should Disregard Defendants' Procedurally Defective Cross-Motion to Dismiss the Complaint

Although Defendants purport to appear in this action "for the sole purpose of responding to Plaintiffs' motion for alternative service" (Opp. Mem. at n.1), they also seek affirmative relief in the form of dismissal of the Complaint. *See* Opp. Mem. at 13-16. Having failed to request a pre-motion conference as required by the Court's Individual Motion Practices and Rules, and failed to serve a notice of motion as required by Local Civil Rule 7.1(a)(1), Defendants are not entitled to any such affirmative relief. *See, e.g, Hailoo v. Disability RMS*, 2015 WL 7575906, at *1 (E.D.N.Y. Nov. 25, 2015) (refusing to recognize a request for summary judgment submitted without a notice of cross-motion); *Azkour v. Haouzi*, 2012 WL 4832811, at *6 (S.D.N.Y. Sept. 28, 2012) ("When relief that goes beyond seeking dismissal of a motion is sought, compliance with Local Civil Rule 7.1(a)(1) is mandatory."). Therefore, the Court should dismiss Defendants' cross-motion as procedurally defective.

### B. Because the Foreign Country Service Exception to Rule 4(m) Applies Here Plaintiffs Are Not Required to Serve Defendants Within 90 Days

The record facts in this proceeding belie Defendants' assertion that Plaintiffs have made no efforts to serve the Defendants within the 90-day window prescribed by Rule 4(m). Plaintiffs filed their Complaint on July 18, 2024. *See* Rocco Decl. at ¶ 16; DE 1. Accordingly, the 90-day window within which Plaintiffs were required to commence their efforts to serve the Defendants in Qatar did not expire until midnight on October 16, 2024. *See* Fed. R. Civ. P. 6(a)(1) and (4); Opp. Mem. at 4. Prior to that time, Plaintiffs' counsel had (1) twice sought the Defendants' waiver of formal service; (2) filed a pre-motion letter seeking the Court's assistance in effecting service upon the Defendants either pursuant to Rule 4(f)(2)(B) or Rule 4(f)(3), and (3) timely

served the instant motion on Defendants' U.S. Counsel in accordance with the Court's

October 11, 2024 minute order.  *See* Rocco Decl. ¶¶ 17-19; DE 8.  Under these circumstances,

Defendants cannot in good faith assert that Plaintiffs have "utterly failed to initiate service within

90 days" (Opp. Mem. at 15), as would be required in order to render Rule 4(m)'s foreign country

service exception inapplicable here.

Defendants cannot dismiss Plaintiffs' counsel's efforts to obtain waivers of service as

merely "sending emails to counsel" (Opp. Mem. at 12) because courts have recognized such

efforts as attempted service.  *See, e.g.*, *Moskovits v. Fed. Republic of Brazil*, 2024 WL 3299802,

at *2 (S.D.N.Y. June 4, 2024) (applying foreign country service exception to Rule 4(m) where

plaintiff had unsuccessfully requested that defendants' U.S. counsel accept service); *Prediction

Co. v. Rajgarhia*, 2010 WL 1050307, at *2 (S.D.N.Y. Mar. 22, 2010) (*cited in* Opp. Mem. at 11)

(plaintiff "ha[d] made a reasonable effort to effectuate service" by attempting unsuccessfully to

obtain the foreign defendant's address).  Furthermore, Defendants have not cited, and Plaintiffs'

counsel have been unable to locate, any instance in which an action against a foreign defendant

was dismissed under Rule 4(m) even though motion practice seeking letters rogatory or

alternative service was initiated within 90 days after the complaint was filed.  *See* Opp. Mem. at

13.[10]  Dismissal makes no sense in these circumstances, where Plaintiffs have acted reasonably

by seeking to obviate the need for Court intervention, and Defendants are well aware of this

Complaint and have retained the same counsel who represent them in related litigation to defend

---

[10]  *Citing USHA (India), Ltd. v. Honeywell Int'l, Inc.*, 421 F.3d 129, 133-34 (2d Cir. 2005)
(plaintiff conceded that it had not attempted to serve the Japanese defendant); *DEF v. ABC*, 366
F. App'x 250, 253 (2d Cir. 2010) (defendants made no attempt to serve their third-party
complaint for two years); *Falvey Cargo Underwriting Ltd. v. Zim Integrated Shipping Servs.
Ltd.*, 2023 WL 871688, at *9 (S.D.N.Y. Nov. 30, 2023) (plaintiffs "made no showing of any
efforts" to serve foreign defendant for more than three years).

this action.  Hence, Defendants' cross-motion to dismiss the Complaint pursuant to Rule 4(m) must be denied.

**CONCLUSION**

For the forgoing reasons, and for the reasons set forth in Plaintiffs' opening memorandum of law, Plaintiffs respectfully request this Court to: (1) disregard or otherwise dismiss Defendants' procedurally improper and unmeritorious motion to dismiss the Complaint; and (2) grant Plaintiffs' motion by either:  (a) entering an order pursuant to Fed. R. Civ. P. 4(f)(3) authorizing Plaintiffs to serve the Summons and Complaint on Defendants by transmitting same, together with Arabic translations, to Defendants' counsel of record in the *Force* and *Henkin* Actions at the e-mail addresses those counsel have designated as their primary e-mail addresses for purposes of receiving notices of electronic filing via this Court's Official Electronic Document Filing System; or alternatively (b) issuing the proposed Letters Rogatory submitted as Exhibits 7-9 to the October 16, 2024 Declaration of Patrick L. Rocco, bearing the Court's original signature and seal, and direct the Clerk of Court to prepare three exemplified copies of the Complaint filed on July 18, 2024 (DE 1) and the Summons issued on July 19, 2024 (DE 6).

Dated:  November 6, 2024      Respectfully submitted,

                 /s/ Patrick L. Rocco
              James P. Bonner (jbonner@fbrllp.com)
              Patrick L. Rocco (procco@fbrllp.com)
              Susan M. Davies (sdavies@fbrllp.com)
              FLEISCHMAN BONNER & ROCCO LLP
              445 Hamilton Avenue, Suite 402
              White Plains, New York 10601
              (908) 516-2066

              *Counsel for Plaintiffs*